# <u>EXHIBIT 1</u>

EXECUTION VERSION

## THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 |
| In re Alternators | : | Case No. 2:13-cv-00702-MOB-MKM |
| In re Starters | : | Case No. 2:13-cv-01102-MOB-MKM |
| In re Ignition Coils | : | Case No. 2:13-cv-01402-MOB-MKM |
| In re Fuel Injection Systems | : | Case No. 2:13-cv-02202-MOB-MKM |
| In re Valve Timing Control Devices | : | Case No. 2:13-cv-02502-MOB-MKM |
| In re Wire Harness Systems | : | Case No. 2:12-cv-00102-MOB-MKM |
| In re HID Ballasts | : | Case No. 2:13-cv-01702-MOB-MKM |
| In re Electronic Powered Steering Assemblies | : : : | Case No. 2:13-cv-01902-MOB-MKM |
| THIS DOCUMENT RELATES TO | : : | |
| Automobile Dealership Actions | : | |

### SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this 30th day of March, 2016 ("Execution Date") between Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. (the "Mitsubishi Electric Defendants") and Automobile Dealership Plaintiffs (as defined below), both individually and on behalf of proposed classes of automobile dealer indirect purchasers ("Settlement Classes") defined below in Paragraph 23.

WHEREAS, Automobile Dealership Plaintiffs are prosecuting the above *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311 (E.D. Mich.) which includes Case No. 2:13-cv-00702 ("Alternators Action"), Case No. 2:13-cv-01102 ("Starters Action"), Case No. 2:13-cv-01402 ("Ignition Coils Action"), Case No. 2:13-cv-02202 ("Fuel Injection Systems Action"), Case No. 2:13-cv-02502 ("Valve Timing Control Devices Action"),

Case No. 2:12-cv-00102 ("Wire Harness Systems Action"), Case No. 2:13-cv-01702 ("HID Ballasts Action"), and Case No. 2:13-cv-01902 ("Electronic Powered Steering Assemblies Action") on their own behalf and on behalf of the Settlement Classes against, among others, the Mitsubishi Electric Defendants;

WHEREAS, Automobile Dealership Plaintiffs allege that they were injured as a result of the Mitsubishi Electric Defendants' participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, allocate markets and customers for (1) Alternators in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in Automobile Dealership Plaintiffs' Consolidated Amended Class Action Complaint ("Alternators Complaint"); (2) Starters in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in Automobile Dealership Plaintiffs' Consolidated Amended Class Action Complaint ("Starters Complaint"); (3) Ignition Coils in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in Automobile Dealership Plaintiffs' Consolidated Amended Class Action Complaint ("Ignition Coils Complaint"); (4) Fuel Injection Systems in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in Automobile Dealership Plaintiffs' Consolidated Amended Class Action Complaint ("Fuel Injection Systems Complaint"); (5) Valve Timing Control Devices in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in Automobile Dealership Plaintiffs' Consolidated Amended Class Action Complaint ("Valve Timing Control Devices Complaint"); (6) Automotive Wire Harness Systems in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and

consumer protection laws as set forth in Automobile Dealership Plaintiffs' Third Consolidated Class Action Complaint ("Wire Harness Systems Complaint"); (7) HID Ballasts in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in Automobile Dealership Plaintiffs' Consolidated Amended Class Action Complaint ("HID Ballasts Complaint"); and (8) Electronic Powered Steering Assemblies in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws as set forth in Automobile Dealership Plaintiffs' Consolidated Second Amended Class Action Complaint ("Electronic Powered Steering Assemblies Complaint");

WHEREAS, Automobile Dealership Plaintiffs have sought leave of the Court to file the Automobile Dealership Plaintiffs' Proposed Consolidated Amended Complaint ("Proposed Consolidated Amended Complaint") alleging that they were injured as a result of the Mitsubishi Electric Defendants' participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, allocate markets and customers for certain automotive parts as defined in Paragraph 12 of the Proposed Consolidated Amended Complaint in violation of Section 1 of the Sherman Act and various State antitrust, unjust enrichment, and consumer protection laws;

WHEREAS, in the Complaints and the Proposed Consolidated Amended Complaint, Automobile Dealership Plaintiffs have sought both a nationwide injunction under the Clayton Act and damages under the laws of certain states;

WHEREAS, the Mitsubishi Electric Defendants do not admit Automobile Dealership Plaintiffs' allegations and would assert defenses to Automobile Dealership Plaintiffs' claims;

WHEREAS, arm's-length settlement negotiations over a protracted period of time have taken place between Settlement Class Counsel (as defined below) and counsel for the Mitsubishi

Electric Defendants and this Agreement has been reached as a result of those negotiations, including with the assistance of a mediator;

WHEREAS, Automobile Dealership Plaintiffs have conducted an investigation into the facts and the law regarding the Actions and have concluded that resolving the claims asserted in those Actions against the Mitsubishi Electric Defendants, according to the terms set forth below, is in the best interest of Automobile Dealership Plaintiffs and the Settlement Classes because of the payment of the Settlement Amount and the value of the Cooperation (as those terms are defined below) that the Mitsubishi Electric Defendants have agreed to provide pursuant to this Agreement;

WHEREAS, the Actions will continue against Defendants (as defined below) that are not Releasees (as defined below);

WHEREAS, the Mitsubishi Electric Defendants, despite their belief that they are not liable for the claims asserted and have good defenses thereto, have nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted by the Automobile Dealership Plaintiffs against the Mitsubishi Electric Defendants with respect to Automotive Parts as defined in Paragraph 12 of the Proposed Consolidated Amended Complaint, including  Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices (also referred to as variable valve timing devices and/or variable timing control devices), Automotive Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies, based on the allegations in the Actions, as more particularly set out below;

WHEREAS, the Mitsubishi Electric Defendants have agreed to provide Cooperation (as defined below) to Automobile Dealership Plaintiffs in the ongoing prosecution of the Actions as set forth in this Agreement, and Automobile Dealership Plaintiffs believe, based on their investigation, that such Cooperation will reduce Automobile Dealership Plaintiffs' substantial burden and expense associated with prosecuting the Actions; and

WHEREAS, Automobile Dealership Plaintiffs recognize the benefits of the Mitsubishi Electric Defendants' Cooperation and recognize that because of joint and several liability, this Agreement with the Mitsubishi Electric Defendants does not unduly diminish Automobile Dealership Plaintiffs' ability to collect damages to which they and the Settlement Classes (as defined below) may be entitled to in the Actions from non-Releasees under governing law;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Actions be settled, compromised, and dismissed on the merits with prejudice as to the Releasees, as defined below, and except as hereinafter provided, without costs as to Automobile Dealership Plaintiffs, the Settlement Classes, the Mitsubishi Electric Defendants or other Releasees, subject to the approval of the Court, on the following terms and conditions:

A.    Definitions

1.    "Actions" means the following cases filed in the MDL Proceeding:

(a)    Case No. 2:13-cv-00702 ("Alternators Action");

(b)    Case No. 2:13-cv-01102 ("Starters Action");

(c)    Case No. 2:13-cv-01402 ("Ignition Coils Action");

(d)    Case No. 2:13-cv-02202 ("Fuel Injection Systems Action");

(e)    Case No. 2:13-cv-02502 ("Valve Timing Control Devices Action");

(f)     Case No. 2:12-cv-00102 ("Wire Harness Systems Action");

(g)     Case No. 2:13-cv-01702 ("HID Ballasts Action");

(h)     Case No. 2:13-cv-01902 ("Electronic Powered Steering Assemblies Action"); and

(i)     Any other case in the MDL Proceeding in which the Proposed Consolidated Amended Complaint, or any complaint materially the same thereto, is filed.

2.     "Alternators" has the meaning of that term in Paragraph 2 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-702 (Sept. 25, 2015), ECF No. 51.

3.     "Automotive Parts" means any part or part assembly designed for installation in any four-wheeled passenger automobile, van, sports utility vehicle, crossover, or pick-up truck as defined in Paragraph 12 of the Proposed Consolidated Amended Complaint and includes Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices (also referred to as variable valve timing devices and/or variable timing control devices), Automotive Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies.

4.     "Automotive Wire Harness Systems" has the meaning of that phrase in Paragraph 3 of the Third Consolidated Class Action Complaint, Case No. 2:12-cv-102 (Oct. 17, 2014), ECF No. 219.

5.     "Complaints" means each of the following documents:

(a)     the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-702 (Sept. 25, 2015), ECF No. 51 (Alternators);

(b)     the Consolidated Second Amended Class Action Complaint, Case No. 2:13-cv-1902 (Oct. 26, 2015), ECF No. 89 (Electronic Powered Steering Assemblies);

(c)     the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-2202 (Jan. 16, 2015), ECF No. 33 (Fuel Injection Systems);

**EXECUTION VERSION**

(d)     the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-1702 (June 21, 2014), ECF No. 25 (HID Ballasts);

(e)     the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-1402 (Sept. 26, 2015), ECF No. 53 (Ignition Coils);

(f)     the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-1102 (Sept. 29, 2015) ECF No. 51 (Starters);

(g)     the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-2502 (Jan. 16, 2015), ECF No. 33 (Valve Timing Control Devices); and

(h)     the Third Consolidated Class Action Complaint, Case No. 2:13-cv-102 (Oct. 17, 2014), ECF No. 219 (Wire Harness Products).

6.     "Proposed Consolidated Amended Complaint" means the Consolidated Amended Complaint, Case No. 2:13-cv-702 (Jan. 7, 2016), ECF No. 60-1 (Automotive Parts).

7.     "Cooperation" shall refer to those provisions set forth below in Paragraphs 47 - 61.

8.     "Cooperation Materials" means any information, testimony, Documents (as defined below) or other material (including information from Attorney Proffers) provided by the Mitsubishi Electric Defendants or their counsel under the terms of this Agreement.

9.     "Defendant" means any party named as a defendant in the Actions at any time up to and including the date of Final Court Approval (as defined below).

10.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure, including without limitation, electronically stored information. A draft or non-identical copy of a document is a separate document within the meaning of this term.

11.    "Electronic Powered Steering Assemblies" has the meaning of that phrase in Paragraph 3 of the Consolidated Second Amended Class Action Complaint, Case No. 2:13-cv-1902 (Oct. 26, 2015), ECF No. 89.

12.    "Automobile Dealership Plaintiffs" means those Settlement Class Members, as defined in Paragraph 23, who are named plaintiffs in the Complaints, the Proposed Consolidated Amended Complaint, or who are subsequently added as named plaintiffs in the Actions prior to the entry of final judgment in the Actions against the Mitsubishi Electric Defendants.

13.    "Fuel Injection Systems" has the meaning of that phrase in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-2202 (Jan. 16, 2015), ECF No. 33.

14.    "HID Ballasts" has the meaning of that phrase in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-1702 (June 21, 2014), ECF No. 25.

15.    "Ignition Coils" has the meaning of that phrase in Paragraph 2 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-1402 (Sept. 26, 2015), ECF No. 53.

16.    "Indirect Purchaser States" means Arkansas, Arizona, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Massachusetts, Maine, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

17.    "MDL Proceeding" means *In re Automotive Parts Antitrust Litigation*, No. 12-md-2311 (Eastern District of Michigan).

**EXECUTION VERSION**

18.     "Opt-Out Deadline" means the deadline set by the Court for the timely submission of requests by Settlement Class Members to be excluded from the Settlement Class(es).

19.     "Protective Orders" means the Stipulation And Protective Order Governing The Production And Exchange Of Confidential Information, No. 12-md-2311 (Eastern District of Michigan July 10, 2012), ECF No. 200, and any other similar order issued in any Action.

20.     "Released Parts" refer to Automotive Parts as defined in Paragraph 12 of the Proposed Consolidated Amended Complaint, including Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices (also referred to as variable valve timing devices and/or variable timing control devices), Automotive Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies.

21.     "Releasees" refer to Mitsubishi Electric Corporation, Mitsubishi Electric U.S. Holdings, Inc., and Mitsubishi Electric Automotive America, Inc., and to their past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, parents, subsidiaries, affiliates, partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executors, administrators and assigns of any of the foregoing, excluding any defendants or alleged co-conspirators (other than the Mitsubishi Electric Defendants and their subsidiaries or affiliates) named in any action brought in the MDL Proceeding.

22.     "Releasors" refer to the Settlement Class Members, as defined in Paragraph 25, below, and to their past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, parents, subsidiaries, affiliates, partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now,

9

affiliated, and the predecessors, successors, heirs, executors, administrators and assigns of any of the foregoing, other than individual employees of Releasors who opt-out pursuant Paragraph 41 of this Agreement as to their personal claims.

23.     For purposes of this Agreement, the "Settlement Classes" are defined to include each of the  following classes:

(a)     "Alternators Settlement Class" is defined as:

All automobile dealers that, from July 1, 1998, through the Execution Date, purchased a new vehicle in the United States that included one or more Alternators as a component part, or indirectly purchased one or more Alternators as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(b)     "Starters Settlement Class" is defined as:

All automobile dealers that, from July 1, 1998, through the Execution Date, purchased a new vehicle in the United States that included one or more Starters as a component part, or indirectly purchased one or more Starters as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(c)     "Ignition Coils Settlement Class" is defined as:

All automobile dealers that, from July 1, 1998, through the Execution Date, purchased a new vehicle in the United States that included one or more Ignition Coils as a component part, or indirectly purchased one or more Ignition Coils as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(d)     "Fuel Injection Systems Settlement Class" is defined as:

All automobile dealers that, from July 1, 1998, through the Execution Date, purchased a new vehicle in the United States that included one or more Fuel Injection Systems as a component part, or indirectly purchased one or more Fuel Injection Systems as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(e)     "Valve Timing Control Devices Settlement Class" is defined as:

All automobile dealers that, from July 1, 1998, through the Execution Date, purchased a new vehicle in the United States that included one or more Valve

Timing Control Devices as a component part, or indirectly purchased one or more Valve Timing Control Devices as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(f)      "Automotive Wire Harness Systems Settlement Class" is defined as:

All automobile dealers that, from July 1, 1998, through the Execution Date, purchased a new vehicle in the United States that included one or more Automotive Wire Harness Systems as a component part, or indirectly purchased one or more Automotive Wire Harness Systems as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(g)      "HID Ballasts Settlement Class" is defined as:

All automobile dealers that, from July 1, 1998, through the Execution Date, purchased a new vehicle in the United States that included one or more HID Ballasts as a component part, or indirectly purchased one or more HID Ballasts as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

(h)      "Electronic Powered Steering Assemblies Settlement Class" is defined as:

All automobile dealers that, from July 1, 1998, through the Execution Date, purchased a new vehicle in the United States that included one or more Electronic Powered Steering Assemblies  as a component part, or indirectly purchased one or more Electronic Powered Steering Assemblies  as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.

24.      "Settlement Class Counsel" shall refer to the law firms of:

Barrett Law Group, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095

Cuneo Gilbert & LaDuca, LLP
507 C Street, N .E.
Washington, DC 20002

Larson King, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101

**EXECUTION VERSION**

25.     "Settlement Class Member" means each member of the Settlement Classes who has not timely elected to be excluded from the Settlement Classes.

26.     "Settlement Amount" shall be US $20,282,927.00 and the Settlement Amount plus any income or interest earned upon this sum after it is deposited into the Escrow Account(s) (as defined below) shall constitute the Settlement Funds (as defined below).

27.     "Starters" has the meaning of that term in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-1102 (Sept. 29, 2015), ECF No. 51.

28.     "Valve Timing Control Devices" has the meaning of that phrase in Paragraph 3 of the Consolidated Amended Class Action Complaint, Case No. 2:13-cv-2502 (Jan. 16, 2015), ECF No. 33.

B.      <u>Approval of this Agreement and Dismissal of Claims Against the Mitsubishi Electric Defendants</u>

29.     On the Execution Date, Automobile Dealership Plaintiffs and the Mitsubishi Electric Defendants shall be bound by its terms and this Agreement shall not be rescinded except in accordance with Paragraphs 40(g), 62 or 63 of this Agreement.

30.     Automobile Dealership Plaintiffs and the Mitsubishi Electric Defendants shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rule of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Actions as to the Releasees.

31.     After reasonable notice to and review and comment by the Mitsubishi Electric Defendants, Automobile Dealership Plaintiffs shall in each Action submit to the Court a motion seeking preliminary approval ("Preliminary Approval") of this Agreement ("Motions").  The Motions shall include the proposed form of an order preliminarily approving this Agreement.

The text of the proposed form of an order preliminarily approving this Agreement shall be subject to good faith efforts to agree by Automobile Dealership Plaintiffs and the Mitsubishi Electric Defendants before submission of the Motions.  Automobile Dealership Plaintiffs and the Mitsubishi Electric Defendants agree to use their best efforts to obtain Preliminary Approval from the Court by April 29, 2016.  The terms of the proposed order preliminarily approving this Agreement will include, at a minimum, the substance of the following provisions:

(a)      preliminarily approving this Agreement as being fair, reasonable, and adequate to the Settlement Classes;

(b)      preliminarily certifying the Settlement Classes as meeting the standards for settlement classes under Federal Rule of Civil Procedure 23;

(c)      appointing the law firms identified in Paragraph 24 of this Agreement as Settlement Class Counsel;

(d)      appointing the Automobile Dealership Plaintiffs as class representatives of the Settlement Classes;

(e)      directing that notice be given to the Settlement Class Members at a time and in a manner consistent with the terms of this Agreement;

(f)      approving the establishment of the Settlement Funds (as defined below);

(g)      providing that the Court's preliminary approval of this Agreement and preliminary certification of the Settlement Classes will have no effect on the rights of any Defendant, including the Mitsubishi Electric Defendants, to contest the certification of any other proposed classes in the MDL Proceeding; and

(h)      staying the Actions against the Mitsubishi Electric Defendants for all purposes except those necessary to effectuate this Agreement.

32.     Automobile Dealership Plaintiffs, at a time to be decided in their sole discretion, shall in each Action submit to the Court a motion for authorization to disseminate notice of the settlement and of this Agreement to all members of the Settlement Classes identified by Automobile Dealership Plaintiffs ("Notice Motions").  The Notice Motions shall provide for notice to all members of the Settlement Classes in a method designed to meet the requirements of Rule 23 and the due process clause.  The Automobile Dealership Plaintiffs will submit a draft of the Notice Motions to the Mitsubishi Electric Defendants sufficiently in advance of the date the Automobile Dealership Plaintiffs intend to submit the Notice Motions to the Court for the Mitsubishi Electric Defendants to review and comment upon the Notice Motions.  To mitigate the costs of notice, Automobile Dealership Plaintiffs shall endeavor to disseminate a combined notice to the Settlement Classes of this settlement and any other settlements that have been or are reached by the time of the Notice Motions.  The Notice Motions shall include a proposed form of, method for, and date of dissemination of notice in each Action.

33.     Automobile Dealership Plaintiffs shall seek, and the Mitsubishi Electric Defendants will not object unreasonably to, the entry of an order and final judgment in each Action, the text of which Automobile Dealership Plaintiffs and the Mitsubishi Electric Defendants shall agree upon.  The terms of such orders and final judgments will include, at a minimum, the substance of the following provisions:

(a)     certifying the Settlement Classes described in Paragraph 23, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class for each Action;

(b)      approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

(c)      as to the Mitsubishi Electric Defendants, directing that the Actions as well as any other proceeding against the Mitsubishi Electric Defendants brought by the same classes as in the Actions in which the Proposed Consolidated Amended Complaint or any complaint materially the same thereto is entered, be dismissed with prejudice and, except as provided for in this Agreement, without costs;

(d)      reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement, as well as over the Mitsubishi Electric Defendants, for the duration of its provision of Cooperation pursuant to this Agreement, to the United States District Court for the Eastern District of Michigan;

(e)      determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgments of dismissal in each Action as to the Mitsubishi Electric Defendants shall be final;

(f)      providing that (1) the Court's certification of the Settlement Classes is without prejudice to, or waiver of, the rights of any Defendant, including the Mitsubishi Electric Defendants (if this settlement is vacated or terminated), to contest certification of any class proposed in the MDL Proceeding, (2) the Court's findings in this Order shall have no effect on the Court's ruling on any motion to certify any class in the MDL Proceeding; and (3) no party may cite or refer to the Court's approval of the Settlement Classes as persuasive or binding authority with respect to any contested motion to certify any such class;

**EXECUTION VERSION**

(g)     enjoining the Mitsubishi Electric Defendants, for a period of two years beginning on the date of entry of the final order and judgment, from engaging in any price-fixing, bid-rigging, or market allocation as to any Automotive Part in violation of Section 1 of the Sherman Act; and

(h)     enjoining any Settlement Class Member, and their counsel, from prosecuting any action against the Mitsubishi Electric Defendants or the Releasees that is released by this Agreement.

34.     This Agreement shall become final when (1) the Court has entered in each Action a final order that is consistent with the requirements of Paragraph 33 above, and (2) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to the Mitsubishi Electric Defendants described in (1) hereof has expired in each Action and no motion or other pleading has been filed with the Court (or with any other court) seeking to set aside, enjoin, or in any way alter the judgment or final approved order in each Action or to toll the time for appeal of the judgment in each Action or, if appealed, approval of this Agreement and the final judgment in each Action as to the Mitsubishi Electric Defendants has been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review ("Final Court Approval").  It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.

35.     Neither this Agreement (whether or not it should become final) nor the final judgment in each of the Actions, nor any and all negotiations, documents and discussions associated with them, shall be deemed or construed to be an admission by the Mitsubishi Electric Defendants or the Releasees, or evidence, of any violation of any statute or law or of any liability

or wrongdoing whatsoever by the Mitsubishi Electric Defendants or the Releasees, or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the Actions, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Actions or in any other action or proceeding against the Mitsubishi Electric Defendants and any other Releasees.   Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by the Mitsubishi Electric Defendants, shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.   Nothing in this Paragraph shall prevent Automobile Dealership Plaintiffs from using Cooperation Materials produced pursuant to Paragraphs 47 - 61 for the prosecution of the claims in the MDL Proceeding.

C.   Release, Discharge, and Covenant Not to Sue

36.   In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final, as set out in Paragraph 34 of this Agreement, and in consideration of payment of the Settlement Amount as specified in Paragraph 38 of this Agreement, the injunction to be entered as described in Paragraph 33(g) of this Agreement, and for other valuable consideration, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Settlement Class Member has objected to this Agreement or makes a claim upon or participates in the below-described Settlement Funds whether directly, representatively, derivatively or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may ever have, that now

exist or may exist in the future, on account of, or in any way related to, the conduct alleged in the Complaints or the Proposed Consolidated Amended Complaint or any act or omission of the Releasees (or any of them) concerning all Released Parts, including but not limited to any conduct alleged, and causes of action asserted or that could have been alleged or asserted, in any class action or other complaints filed in the Actions concerning Released Parts, provided, however, that nothing herein shall release:  (1) any claims made by direct purchasers of Released Parts; (2) any claims made by end-payors that are indirect purchasers of Released Parts in the MDL Proceeding; (3) any claims made by any State, State agency, or instrumentality or political subdivision of a State, as to government purchases and/or penalties relating to Released Parts; (4) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, warranty, securities, or similar claim relating to Released Parts; (5) claims concerning any product other than Released Parts; (6) claims under laws other than those of the United States relating to purchases of Released Parts made outside of the United States; and (7) damage claims under the state or local laws of any jurisdiction other than an Indirect Purchaser State  ("Released Claims").  Releasors shall not, after the date of this Agreement, seek to establish liability against any Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims unless this Agreement is, for any reason, not finally approved or terminated.

37.     In addition to the provisions of Paragraph 36 of this Agreement, Releasors hereby expressly waive and release, with respect to the Released Claims, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT

THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR[;]

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to section 1542 of the California Civil Code.  Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 36 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Mitsubishi Electric Defendants and Automobile Dealership Plaintiffs have agreed to release pursuant to Paragraph 36, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

      D.    <u>Settlement Payment</u>

      38.    Subject to the provisions hereof, the Mitsubishi Electric Defendants shall pay or cause to be paid the Settlement Amount.  The Settlement Amount shall be paid in United States Dollars to a trust established under Delaware law (the "Settlement Funds") by Settlement Class Counsel. Such Settlement Funds shall be administered in accordance with the provisions of Paragraph 40 of this Agreement. Mitsubishi Electric Defendants shall transfer the Settlement Amount to the Settlement Funds by wiring such funds to one or more escrow accounts ("Escrow Account(s)") within thirty (30) days following the later of (a) the date the court grants Preliminary Approval or (b) the Mitsubishi Electric Defendants being provided with the account number, account name, and wiring information for the Escrow Account(s). No part of the Settlement Amount paid by the Mitsubishi Electric Defendants shall constitute, nor shall it be

construed or treated as constituting, a payment for treble damages, fines, penalties, forfeitures or punitive recoveries.

39.　　The allocation of the Settlement Amount to each Settlement Class as defined in Paragraph 23 above shall be determined by Settlement Class Counsel and subject to approval by the Court after notice to the Settlement Classes as directed by the Court.

E.　　Qualified Settlement Fund

40.　　(a)　　The Escrow Account(s) will be established at Huntington National Bank with such Bank serving as escrow agent ("Escrow Agent") subject to escrow instructions mutually acceptable to Settlement Class Counsel and the Mitsubishi Electric Defendants, such escrow to be subject to the Court's supervision and control. In addition, Settlement Class Counsel or the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 40.　Such elections shall be made in compliance with the procedures and requirements contained in any applicable regulations.

(b)　　Automobile Dealership Plaintiffs and the Mitsubishi Electric Defendants agree to treat the Settlement Funds as being at all times a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1. All provisions of this Agreement shall be interpreted in a manner that is consistent with the Settlement Funds being a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1.

(c)　　For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the administrator for the Settlement Funds shall be Settlement Class Counsel. Settlement Class Counsel shall cause the timely and proper filing of all informational and other tax returns necessary or advisable with respect to the Settlement Funds (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k) and (l)).　Settlement Class Counsel　shall　make a "relation-back election" (as defined in

Treasury Regulation § 1.468B-1(j)) back to the earliest permitted date, if available. Such returns (as well as the relation-back election described in this Paragraph 40(c)) shall be consistent with the Settlement Funds' status as a Qualified Settlement Fund and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest or penalties), on the Settlement Funds shall be paid out of the Settlement Funds as provided in Paragraph 40(f) hereof. It shall be the responsibility of Settlement Class Counsel to cause the timely and proper preparation and delivery of the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(d)     The Escrow Agent shall cause the Settlement Funds to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively, by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates.   The Mitsubishi Electric Defendants shall bear no risk related to the Settlement Funds.  All funds held in the Settlement Funds shall be deemed and considered to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement or further order(s) of the Court.

(e)     All (1) taxes (including any estimated taxes, interest or penalties) arising with respect to the Settlement Funds, including any taxes or tax detriments that may be imposed upon the Mitsubishi Electric Defendants or any Releasee with respect to the Settlement Funds for any period during which the Settlement Funds do not qualify as a Qualified Settlement Fund for federal or state income tax purposes ("Taxes"); and (2) expenses and costs incurred in

connection with the operation and implementation of this Paragraph 40 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 40 ("Tax Expenses")), shall be paid out of the Settlement Funds.  For the purpose of this Paragraph 40, references to the Settlement Funds shall include the Settlement Amount and any earnings thereon after being deposited in the Escrow Account(s).

(f)     Neither the Mitsubishi Electric Defendants nor any Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses or the filing of any tax returns or other documents with the Internal Revenue Service or any other taxing authority.  The Trustee, and/or Settlement Class Counsel shall indemnify and hold the Mitsubishi Electric Defendants and the Releasees harmless for Taxes and Tax Expenses (including taxes payable by reason of such indemnification).  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Funds and shall be timely paid by the Settlement Class Counsel out of the Settlement Funds without prior order from the Court and Settlement Class Counsel  shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)).  The Mitsubishi Electric Defendants or any Releasees shall not be responsible or have any liability therefor or for any reporting requirements that may relate thereto.  Mitsubishi Electric Defendants and Settlement Class Counsel agree to cooperate with each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph 40.

(g)      If this Agreement does not receive Final Court Approval, then the Settlement Amount (other than costs incurred and expended in accordance with Paragraph 42), shall be returned to the Mitsubishi Electric Defendants from the Settlement Funds along with any interest accrued thereon within thirty (30) calendar days of the Court's final determination.

F.      Exclusions

41.      Subject to Court approval, any person or entity seeking exclusion from the Settlement Class(es) must file a written request for exclusion by the Opt-Out Deadline.  Any person or entity that files such a request shall be excluded from the Settlement Class(es) and shall have no rights with respect to this settlement.  Subject to Court approval, a request for exclusion that does not comply with all of the provisions set forth in the applicable class notice will be invalid, and the person(s) or entity(ies) serving such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by this Agreement upon Final Court Approval. Settlement Class Counsel shall, within ten (10) business days of the Opt Out Deadline, provide the Mitsubishi Electric Defendants with a list and copies of all opt out requests it receives in each of the Actions and shall file under seal with the Court a list of all members of the Settlement Classes who timely and validly opted out of the settlement.

(a)      Subject to Court Approval, any member of the Settlement Class(es) who submits a valid and timely request for exclusion will not be a Settlement Class Member and shall not be bound by the terms of this Agreement.  The Mitsubishi Electric Defendants reserve all of their legal rights and defenses, including, but not limited to, any defenses relating to whether any excluded member of the Settlement Classes is an indirect purchaser of Released Parts.

(b)      Subject to Court Approval, in the written request for exclusion, the member of the Settlement Classes must state his, her, or its full name, address, and telephone number.  Further,

the member of the Settlement Classes must include a statement in the written request for exclusion that he, she, or it wishes to be excluded from the settlement.

(c)     The Mitsubishi Electric Defendants or Settlement Class Counsel may dispute an exclusion request, and the parties shall, if possible, resolve the disputed exclusion request by agreement and shall inform the Court of their position, and, if necessary, obtain a ruling thereon within thirty (30) days of the Opt-Out Deadline.

(d)     Within twenty (20) business days following the Opt-Out Deadline in accordance with the terms of this Paragraph 41, or as soon thereafter as practicable, the parties shall determine the total number of automobile dealer locations in the Indirect Purchaser States from January 1, 1998 through the Execution Date that: (a) purchased vehicles containing Released Parts manufactured or sold by a Defendant, any current or former parent, subsidiary, or affiliate thereof, or any alleged co-conspirator identified to counsel for the Mitsubishi Electric Defendants by Settlement Class Counsel, or (b) purchased Released Parts manufactured or sold by a Defendant, any current or former parent, subsidiary, or affiliate thereof, or any alleged co-conspirator identified to counsel for the Mitsubishi Electric Defendants by Settlement Class Counsel (defined as "Total Number of Damages Class Members" for purposes of calculating the Total Opt-Out Percentage defined below). The parties shall determine the Total Number of Damages Class Members based upon reasonably available public information, and each dealership location shall be counted as a separate Settlement Class Member for the purposes of this calculation. In the event the parties mutually agree that non-public information is required to determine the Total Number of Damages Class Members, the parties shall identify an appropriate source of, and the Mitsubishi Electric Defendants shall pay for the reasonable costs incurred in securing, the necessary information. Within ten (10) business days following the determination

**EXECUTION VERSION**

of the Total Number of Damages Class Members, the parties shall calculate the percentage of the Total Number of Damages Class Members that have validly and timely requested to be excluded from the Settlement Classes ("Total Opt-Out Percentage"), provided that the Mitsubishi Electric Defendants shall have the sole option to waive the calculation and, by doing so, waive their rights under this Paragraph. The Total Opt-Out Percentage is a fraction, the numerator of which is the Total Number of Damages Class Members that have validly and timely requested to be excluded from the Settlement Classes, and the denominator of which is the Total Number of Damages Class Members. Should the Total Opt-Out Percentage be more than ten percent (10%), the Mitsubishi Electric Defendants shall be entitled to a reduction in the total Settlement Amount that the Settlement Classes would receive measured by the difference between the Total Opt-Out Percentage and ten percent (10%). As an example, for the avoidance of doubt, if the Total Opt-Out Percentage were twenty-five percent (25%), the Mitsubishi Electric Defendants shall be entitled to a fifteen percent (15%) reduction.

      G.    <u>Payment of Expenses</u>

      42.    The Mitsubishi Electric Defendants agree to permit use of a maximum of US $300,000 of the Settlement Funds toward the cost of providing notice to the Settlement Classes and the costs of administration of the Settlement Funds prior to Final Court Approval after it is paid into the Settlement Funds. To the extent such expenses have been actually incurred or paid for notice and administration costs, those notice and administration expenses (up to the maximum of US $300,000) are not recoupable if this settlement does not become final or is terminated. The Escrow Agent shall return all remaining portions of the Settlement Funds to the Mitsubishi Electric Defendants should this Agreement not receive Final Court Approval. Other than as set forth in this Paragraph 42, or as authorized by the Court pursuant to Paragraph 40 to be paid from the Settlement Amount, the Mitsubishi Electric Defendants shall not be liable for

any of the costs or expenses of the litigation incurred by Automobile Dealership Plaintiffs in the Actions, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, appeals, trials or the negotiation of other settlements, or for Settlement Class administration and costs.

H.   The Settlement Funds

43.   Releasors shall look solely to the Settlement Funds for settlement and satisfaction against the Releasees of all Released Claims, and shall have no other recovery against the Mitsubishi Electric Defendants or any Releasee for any Released Claims.

44.   After this Agreement becomes final within the meaning of Paragraph 34, and at a time to be determined by Settlement Class Counsel, the Settlement Funds shall be distributed in accordance with plans to be submitted, subject to approval by the Court.  In no event shall any Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Funds, including, but not limited to, the costs and expenses of such distribution and administration, with the exception of the provisions set forth in Paragraph 42 of this Agreement.

I.   Settlement Class Counsel's Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for Class Representatives

45.   Automobile Dealership Plaintiffs and Settlement Class Counsel shall be reimbursed subject to Court approval and indemnified solely out of the Settlement Funds for their costs and expenses.  The Mitsubishi Electric Defendants and the Releasees shall not be liable for any additional costs, fees, or expenses of any of Automobile Dealership Plaintiffs' or the Settlement Classes' respective attorneys, experts, advisors, agents, or representatives, but all

such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Funds.

46.    (a)    Settlement Class Counsel may, after Preliminary Approval of this Agreement at a time to be determined in their sole discretion, submit an application to the Court ("Fee and Expense Application") for the following payments to be made to Settlement Class Counsel after Final Court Approval of this Agreement:  (1) an award of attorneys' fees not in excess of one-third of the sum of the Settlement Amount and any interest accrued thereon while in the Settlement Funds, plus (2) reimbursement of expenses and costs incurred in connection with prosecuting the Actions and incentive awards ("Fee and Expense Award").  Settlement Class Counsel reserve the right to make additional applications from time to time for fees and expenses incurred and reasonable incentive awards, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Funds.

(b)    Subject to Court approval and except as provided herein, Automobile Dealership Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Funds for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation expenses and incentive awards.  Attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Funds upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Funds, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of

expenses is reduced or reversed, or in the event this Agreement is rescinded or terminated pursuant to Paragraphs 62 or 63.

(c)     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, and incentive awards for class representatives to be paid out of the Settlement Funds are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

(d)     Other than to pay the Settlement Amount, as provided herein, neither the Mitsubishi Electric Defendants nor any Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel of any Fee and Expense Award in the Actions.

(e)     Neither the Mitsubishi Electric Defendants nor any Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Actions.

J.     Cooperation

47.     In return for the release and discharge provided herein, in addition to the Settlement Amount, the Mitsubishi Electric Defendants agree to provide substantial cooperation to Automobile Dealership Plaintiffs as set forth below ("Cooperation").  All such Cooperation shall occur in a manner that is in compliance with the Mitsubishi Electric Defendants' obligations to any Government Entity (meaning the United States Department of Justice

("DOJ"), the Japanese Fair Trade Commission, the European Commission, the Canadian Competition Bureau, or any other government entity).  The Mitsubishi Electric Defendants shall not be required to provide Documents or information protected by the attorney-client privilege, the attorney work product doctrine, any applicable privilege under foreign law, or whose disclosure is prohibited by court order, any foreign or domestic law, or by a Government Entity. Should the Mitsubishi Electric Defendants withhold any materials pursuant to the foregoing sentence, the Mitsubishi Electric Defendants will so inform the Automobile Dealership Plaintiffs and will describe the basis for such withholding to the extent permissible under applicable law. Cooperation shall be limited to Released Parts and shall not include information relating to other products manufactured by the Mitsubishi Electric Defendants and/or Releasees.

48.     *Transactional Data*.  At the request of Automobile Dealership Plaintiffs and subject to meet and confer with the Mitsubishi Electric Defendants as to any reasonable limitations on this obligation, the Mitsubishi Electric Defendants will produce within one hundred eighty (180) days, pre-existing transactional data related to Alternators, Starters, Ignition Coils, Fuel Injection Systems, Valve Timing Control Devices (also referred to as variable valve timing devices and/or variable timing control devices), Automotive Wire Harness Systems, HID Ballasts, and Electronic Powered Steering Assemblies. The Mitsubishi Electric Defendants will use reasonable efforts to produce the foregoing transactional data as soon as reasonably possible after execution of the Agreement.  The Mitsubishi Electric Defendants will produce additional transactional data as to any other Automotive Parts at the request of the Automobile Dealership Plaintiffs, subject to reasonable limitation.  The time period for this production will be from January 1, 1996 to a date no later than two years after the execution date of this Agreement.  The precise end-date for this production obligation will be agreed upon by

the parties in subsequent meet and confer discussions, taking into account the burden of producing the transactional data and the Automobile Dealership Plaintiffs' need for that data.

49.     *Documents*.  The Mitsubishi Electric Defendants have provided to Jenner & Block a substantial number of potentially relevant Documents ("Relevant Documents") in connection with investigations by various Government Entities and in connection with the MDL Proceeding. The Mitsubishi Electric Defendants will make the Relevant Documents available for inspection and copying by the Automobile Dealership Plaintiffs, provided that the Mitsubishi Electric Defendants will not be required to make available to Automobile Dealership Plaintiffs any documents protected by the attorney-client privilege, the attorney work product doctrine, any applicable privilege under foreign law, or whose disclosure is prohibited by any court order, foreign or domestic law, or by a Government Entity.  As to Documents in their possession, custody, or control that are not Relevant Documents (as defined above), the Mitsubishi Electric Defendants will consider in good faith any reasonable request by Automobile Dealership Plaintiffs to collect and make such Documents available for inspection and copying, provided the request would not impose an undue burden on the Mitsubishi Electric Defendants.

50.     The Mitsubishi Electric Defendants will have no obligation to collect, search, produce, or make available to the Automobile Dealership Plaintiffs any Documents created on or after July 19, 2011, except that the Mitsubishi Electric Defendants agree to produce certain Documents that relate to the Mitsubishi Electric Defendants' responses to Requests for Quotation and price-reduction requests made after July 19, 2011, subject to reasonable limitations to be agreed upon by the parties in subsequent meet and confer discussions.

51.     Should the Mitsubishi Electric Defendants inadvertently disclose Documents protected by the attorney-client privilege, the attorney work product doctrine, any applicable

privilege under foreign law, or whose disclosure is prohibited by any court order, foreign or domestic law, or by a Government Entity, Automobile Dealership Plaintiffs agree (a) that such disclosure does not constitute a waiver of any applicable privilege or confidentiality requirement and (b) to return such documents to the Mitsubishi Electric Defendants upon a written request from the Mitsubishi Electric Defendants.

52.     *Other Cooperation.*   At the request of Automobile Dealership Plaintiffs, the Mitsubishi Electric Defendants will also provide the following types of cooperation relating to alleged antitrust violations as to Released Parts:  (1) providing a list of current or former officers, directors or employees who were interviewed by any Government Entity, who testified before a grand jury in connection with the DOJ's investigation, or were disclosed to any Government Entity as having knowledge of alleged antitrust violations as to Released Parts; (2) Jenner & Block attorney proffers ("Attorney Proffers"), (3) witness interviews, (4) deposition testimony in the MDL Proceeding, (5) declaration or affidavits in the MDL Proceeding, and (6) trial testimony in the MDL Proceeding.  While there will be no limitation on the number of proffers, depositions, declarations, affidavits, or trial testimony, Automobile Dealership Plaintiffs agree to request such cooperation only when reasonably necessary to their prosecution of the cases in the MDL Proceeding.  If any such interview, deposition, or trial testimony takes place outside of the country of the witness's residence, Settlement Class Counsel shall reimburse the Mitsubishi Electric Defendants for such person's economy class fare and up to $450 per day for lodging and expenses actually incurred.

53.     All Cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided.  Any Attorney Proffers, witness interviews, or depositions provided pursuant to Paragraph 52 shall be coordinated with, and occur at the same time as, the

Attorney Proffers, witness interviews, and depositions to be provided under the Mitsubishi Electric Defendants' cooperation obligations to the End-Payor Plaintiffs and the attorneys general of California and Florida. It is understood that the Mitsubishi Electric Defendants may be unable to make available for interviews, depositions, or trial testimony or any other court proceedings the five (5) individuals referenced in Attachment A (filed under seal) of the plea agreement between Mitsubishi Electric Corporation and the United States of America (Case No. 2:13-cr-20710-PJK, E.D. Mich., ECF No. 9) or any individual who is no longer an officer, director, or employee of any Mitsubishi Electric Defendant.

54.     The Mitsubishi Electric Defendants shall be entitled to designate all Cooperation Materials in accordance with the Protective Orders. Automobile Dealership Plaintiffs and Settlement Class Counsel will not attribute any factual information obtained from Attorney Proffers to the Mitsubishi Electric Defendants or their counsel. Automobile Dealership Plaintiffs and Settlement Class Counsel may share information obtained from Attorney Proffers with End-Payor Plaintiffs and the attorneys general of California and Florida, but shall not disclose information obtained from Attorney Proffers to any other claimants or potential claimants, including without limitation direct purchaser plaintiffs, public entity plaintiffs, and opt-out plaintiffs in the MDL Proceeding, except with the express written consent of the Mitsubishi Electric Defendants.

55.     Notwithstanding any other provision of this Agreement, the parties and their counsel further agree that any Attorney Proffers or other statements made by counsel for the Mitsubishi Electric Defendants in connection with or as part of this settlement shall be governed by Federal Rule of Evidence 408. Notwithstanding anything herein, Settlement Class Counsel may use information contained in such Attorney Proffers or other statements in the prosecution

**EXECUTION VERSION**

of its claims in all cases in the MDL Proceeding including for the purpose of developing an allocation plan relating to any settlement or judgment proceeds, except any claims against Releasees (but shall not introduce any information from an Attorney Proffer into the record, or depose or subpoena any Mitsubishi Electric Defendant counsel related to an Attorney Proffer), and may rely on such information to certify that, to the best of Settlement Class Counsel's knowledge, information and belief, such information has evidentiary support or will likely have evidentiary support after reasonable opportunity for further investigation or discovery.

56.    In the event that the Mitsubishi Electric Defendants produce Documents or provide declarations or written responses to discovery to any party or non-party in the actions in the MDL Proceeding, concerning or relating to the Actions ("Relevant Production"), the Mitsubishi Electric Defendants shall produce all such Documents, declarations or written discovery responses to Automobile Dealership Plaintiffs contemporaneously with making the Relevant Production to the extent such Documents, declarations or written discovery responses have not previously been produced by the Mitsubishi Electric Defendants to Automobile Dealership Plaintiffs.  This Agreement does not restrict Settlement Class Counsel from attending and/or participating in any depositions in the MDL Proceeding.  Settlement Class Counsel may attend and/or participate in any depositions of the Mitsubishi Electric Defendants' witnesses in addition to the depositions set forth in Paragraph 52, and Settlement Class Counsel together with settlement class counsel for the End-Payor Plaintiffs may ask questions for a combined total of three (3) hours at such deposition, provided that the time for participation of Settlement Class Counsel and settlement class counsel for the End-Payor Plaintiffs shall not expand the time permitted for the deposition as may be provided by the Court, and Settlement Class Counsel will not ask the Court to enlarge the time of any deposition noticed of a Mitsubishi Electric

**EXECUTION VERSION**

Defendant current or former employee. Participation by Settlement Class Counsel in the depositions discussed in this Paragraph will not limit the number of depositions to be provided under Paragraph 52 above. Automobile Dealership Plaintiffs and Settlement Class Counsel agree to use their best efforts to ensure that any depositions taken under Paragraph 52 above are coordinated with any other deposition noticed in the MDL Proceeding to avoid unnecessary duplication.

57.     Unless this Agreement is rescinded, disapproved, or otherwise fails to take effect, the Mitsubishi Electric Defendants' obligations to provide Cooperation with respect to any Released Part under this Agreement shall continue only until otherwise ordered by the Court, or the date that final judgment has been entered in the Actions against all Defendants.

58.     If this Agreement is rescinded, disapproved, otherwise fails to take effect, or if final judgment has been entered by the United States District Court for the Eastern District of Michigan in all cases in the MDL Proceeding against all Defendants (collectively "District Court Termination"), unless otherwise agreed by the Mitsubishi Electric Defendants, within sixty (60) days after District Court Termination, Automobile Dealership Plaintiffs must return or destroy all Cooperation Materials received from the Mitsubishi Electric Defendants to the extent required by the Protective Orders, and must comply with all other terms of the Protective Orders governing such return or destruction.

59.     In the event that this Agreement fails to receive Final Court Approval, the parties agree that neither Automobile Dealership Plaintiffs nor Settlement Class Counsel shall be permitted to use or introduce into evidence against the Mitsubishi Electric Defendants and other Releasees, at any hearing or trial, or in support of any motion, opposition or other pleading in the Actions or in any other federal or state or foreign action alleging a violation of any law relating

to the subject matter of the Actions, any Documents provided by the Mitsubishi Electric Defendants and/or the Releasees, their counsel, or any individual made available by the Mitsubishi Electric Defendants pursuant to Cooperation (as opposed to from any other source or pursuant to a court order).  Notwithstanding anything contained herein, Automobile Dealership Plaintiffs and the Settlement Classes are not relinquishing any rights to pursue discovery against the Mitsubishi Electric Defendants and other Releasees in the event that this Agreement fails to receive Final Court Approval, including final approval of the "Settlement Classes" as defined in Paragraph 23, or in the event that it is terminated by either party under any provision herein. Should this Agreement fail to receive Final Court Approval, Automobile Dealership Plaintiffs and the Mitsubishi Electric Defendants will meet-and-confer regarding the number and timing of any additional depositions of current or former employees of the Mitsubishi Electric Defendants in the MDL Proceeding.  If the parties cannot agree, they may move the Special Master or Court in the MDL Proceeding to set the number and timing of such depositions.

60.    The Mitsubishi Electric Defendants and other Releasees need not respond to formal discovery requests from Automobile Dealership Plaintiffs or otherwise participate in the Actions during the pendency of this Agreement, with the exception of the Cooperation provisions set forth above.  Other than to enforce the terms of this Agreement, neither the Mitsubishi Electric Defendants nor Automobile Dealership Plaintiffs shall file motions against the other, in the Actions, during the pendency of this Agreement.

61.    The Mitsubishi Electric Defendants and Automobile Dealership Plaintiffs agree not to disclose publicly or to any other person, except for Releasees where necessary, the terms of this Agreement until this Agreement is submitted to the Court for Preliminary Approval.

K.      Rescission if this Agreement Is Not Approved or Final Judgments Are Not Entered

62.     If this Agreement does not receive Final Court Approval, then the Mitsubishi Electric Defendants and Automobile Dealership Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety.  Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 72.  A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses awarded by the Court from the Settlement Funds shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

63.     In the event that this Agreement does not become final, or this Agreement otherwise is terminated by either party under any provision herein, then:  (1) this Agreement shall be of no force or effect; (2) any and all parts of the Settlement Amount caused to be deposited in the Settlement Funds (including interest earned thereon) shall be returned forthwith to the Mitsubishi Electric Defendants less only disbursements made in accordance with Paragraph 42 of this Agreement; and (3) the Mitsubishi Electric Defendants shall be entitled to any tax refunds owing to the Settlement Funds.  At the request of the Mitsubishi Electric Defendants, Settlement Class Counsel shall file claims for any tax refunds owed to the Settlement Funds and pay the proceeds, after deduction of any fees and expenses incurred with filing such claims for tax refunds, to the Mitsubishi Electric Defendants.  The Mitsubishi Electric Defendants expressly reserve all of their rights and defenses if this Agreement does not become final.

64.     Further, and in any event, Automobile Dealership Plaintiffs and the Mitsubishi Electric Defendants agree that this Agreement, whether or not it shall become final, and any and all negotiations, Documents, and discussions associated with it, shall not be deemed or construed

to be an admission or evidence of (1) any violation of any statute or law or of any liability or wrongdoing whatsoever by the Mitsubishi Electric Defendants or the Releasees, or (2) the truth of any of the claims or allegations contained in the Complaints, the Proposed Consolidated Amended Complaint, or any other pleading filed in the Actions. Evidence derived from this Agreement, whether or not it shall become final, and any and all negotiations, Documents, and discussions associated with it shall not be discoverable or used in any way, whether in the Actions or in any other action or proceeding, against the Mitsubishi Electric Defendants and other Releasees (except to enforce this Agreement). Nothing in this Paragraph shall prevent Automobile Dealership Plaintiffs from using Cooperation Materials produced pursuant to Paragraphs 47-61, subject to the limitations in those paragraphs, for the purpose of prosecution of the claims in the MDL Proceeding, except as to any such claims against the Mitsubishi Electric Defendants or Releasees.

L.     Miscellaneous

65.     This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement as well as cooperation by the Mitsubishi Electric Defendants.

66.     The Mitsubishi Electric Defendants shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

67.     This Agreement does not settle or compromise any claim by Automobile Dealership Plaintiffs or any Settlement Class Member asserted in the Complaints or, if amended, any subsequent Complaints, against any Defendant or alleged co-conspirator other than the Releasees. All rights against such other defendants or alleged co-conspirators are specifically

**EXECUTION VERSION**

reserved by Automobile Dealership Plaintiffs and the Settlement Classes.  All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than the Releasees, for sales made by the Mitsubishi Electric Defendants and the Mitsubishi Electric Defendants' alleged illegal conduct are specifically reserved by Automobile Dealership Plaintiffs and Settlement Class Members.  The Mitsubishi Electric Defendants' sales to the Settlement Classes and the Mitsubishi Electric Defendants' alleged illegal conduct shall remain in the Actions as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Actions or other persons or entities other than the Releasees to the extent permitted by applicable law.

68.    The United States District Court for the Eastern District of Michigan shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Automobile Dealership Plaintiffs and the Mitsubishi Electric Defendants. This Agreement shall be governed by and interpreted according to the substantive laws of the State of Michigan without regard to its choice of law or conflict of laws principles.  The Mitsubishi Electric Defendants will not object to complying with any of the provisions outlined in this Agreement on the basis of jurisdiction.

69.    This Agreement constitutes the entire, complete and integrated agreement among Automobile Dealership Plaintiffs and the Mitsubishi Electric Defendants pertaining to the settlement of the Actions against the Mitsubishi Electric Defendants, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations

**EXECUTION VERSION**

and discussions, either oral or written, between Automobile Dealership Plaintiffs and the Mitsubishi Electric Defendants in connection herewith.  This Agreement may not be modified or amended except in writing executed by Automobile Dealership Plaintiffs and the Mitsubishi Electric Defendants, and approved by the Court.

70.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Automobile Dealership Plaintiffs and the Mitsubishi Electric Defendants. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Automobile Dealership Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors.  The Releasees other than the Mitsubishi Electric Defendants that are parties hereto are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.  This Agreement may be executed in counterparts by Automobile Dealership Plaintiffs and the Mitsubishi Electric Defendants, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

71.     Neither Automobile Dealership Plaintiffs nor the Mitsubishi Electric Defendants shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

72.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile, or electronic mail, or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

**EXECUTION VERSION**

73.    Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Date: March **28**, 2016

By: _____

Don Barrett
David McMullan
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095
(662) 834-2488
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Date: March ___, 2016

By: _____

Jonathan W. Cuneo
Joel Davidow
Victoria Romanenko
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, DC 20002
(202) 789-3960
jonc@cuneolaw.com
Joel@cuneolaw.com
Vicky@cuneolaw.com

Date: March ___, 2016

By: _____

Shawn M. Raiter
Paul A. Sand
LARSON KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
(651) 312-6500
sraiter@larsonking.com
psand@larsonking.com

*Attorneys for Automobile Dealership Plaintiffs*

Date: March ___, 2016

By: _____

Terrence J. Truax
Charles B. Sklarsky
Michael T. Brody
Gabriel A. Fuentes
Daniel T. Fenske

40

**EXECUTION VERSION**

73.    Each of the undersigned attorneys represents that he or she is fully authorized to

enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Date: March ___, 2016                    By:_____

                                                Don Barrett
                                                David McMullan
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095
(662) 834-2488
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Date: March 28, 2016                    By:_____

Jonathan W. Cuneo
Joel Davidow
Victoria Romanenko
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, DC 20002
(202) 789-3960
jonc@cuneolaw.com
Joel@cuneolaw.com
Vicky@cuneolaw.com

Date: March ___, 2016                    By:_____

Shawn M. Raiter
Paul A. Sand
LARSON KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
(651) 312-6500
sraiter@larsonking.com
psand@larsonking.com

*Attorneys for Automobile Dealership Plaintiffs*

Date: March ___, 2016                    By:_____

Terrence J. Truax
Charles B. Sklarsky
Michael T. Brody
Gabriel A. Fuentes
Daniel T. Fenske

40

**EXECUTION VERSION**

73.    Each of the undersigned attorneys represents that he or she is fully authorized to

enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Date: March ___, 2016                     By:_____
                                                  Don Barrett
                                                  David McMullan
                                                  BARRETT LAW GROUP, P.A.
                                                  P.O. Box 927
                                                  404 Court Square
                                                  Lexington, MS 39095
                                                  (662) 834-2488
                                                  dbarrett@barrettlawgroup.com
                                                  dmcmullan@barrettlawgroup.com

Date: March ___, 2016                     By:_____
                                                  Jonathan W. Cuneo
                                                  Joel Davidow
                                                  Victoria Romanenko
                                                  CUNEO GILBERT & LADUCA, LLP
                                                  507 C Street, N.E.
                                                  Washington, DC 20002
                                                  (202) 789-3960
                                                  jonc@cuneolaw.com
                                                  Joel@cuneolaw.com
                                                  Vicky@cuneolaw.com

Date: March ___, 2016                     By:_____
                                                  Shawn M. Raiter
                                                  Paul A. Sand
                                                  LARSON KING, LLP
                                                  2800 Wells Fargo Place
                                                  30 East Seventh Street
                                                  St. Paul, MN 55101
                                                  (651) 312-6500
                                                  sraiter@larsonking.com
                                                  psand@larsonking.com

*Attorneys for Automobile Dealership Plaintiffs*

Date: March 30, 2016                      By:_____
                                                  Terrence J. Truax
                                                  Charles B. Sklarsky
                                                  Michael T. Brody
                                                  Gabriel A. Fuentes
                                                  Daniel T. Fenske

**EXECUTION VERSION**

JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
ttruax@jenner.com
csklarsky@jenner.com
mbrody@jenner.com
gfuentes@jenner.com
dfenske@jenner.com

*Attorneys for the Mitsubishi Electric Defendants*